IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

ROBERT BROWN, #153819,      )
                                 )
      Plaintiff,          )
                                 )
    v.                )        CASE NO. 2:06-CV-29-MHT
                                 )           [WO]
                                 )
JAMES DELOACH, *et al.*,      )
                                 )
      Defendants.      )

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

This 42 U.S.C. § 1983 action is before the court on a complaint filed by Robert
Brown ["Brown"], a state inmate, in which he presents claims arising during his
confinement at the Draper Correctional Facility ["Draper"] against warden James DeLoach,
officer Anthony Smith, steward Wanda Hill, chief steward Oaklee Williams, governor Bob
Riley, former correctional commissioner Donal Campbell, director of institutional services
Jimmy Rhodes, food services specialist Nathaniel Parker and consultant dietician Dottie
Mosley. Specifically, Brown contends that on March 28, 2005 defendants Smith and Hill
acted with deliberate indifference to his safety by failing to protect him from attack by
another inmate. Brown also complains that the aforementioned attack resulted from the
dangerous conditions of confinement in existence at Draper, the policies/procedures of the
Alabama Department of Corrections and a failure of defendants Smith, Hill and DeLoach
to act in accordance with administrative regulations. He requests "that the court exercise[]

its pendent jurisdiction over [his] state law claims" related to the assault and battery at the hands of the other inmate. *Plaintiff's Complaint - Court Doc. No. 1* at 2. Brown seeks declaratory, injunctive and monetary relief for the alleged violations of his constitutional rights. *Id*. at 8.

The defendants filed written reports and supporting evidentiary materials addressing Brown's claims for relief. Pursuant to the orders entered herein, the court deems it appropriate to treat the defendants' written reports as a motion for summary judgment. *Order of February 24, 2006 - Court Doc. No. 15*; *Order of May 22, 2006 - Court Doc. No. 20*. Thus, this case is now pending on the defendants' motion for summary judgment. Upon consideration of this motion, the evidentiary materials filed in support thereof and the plaintiff's responses in opposition to the motion, the court concludes that the defendants' motion for summary judgment is due to be granted.

## I. STANDARD OF REVIEW

"Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (per curiam) (citation to former rule omitted); Fed.R.Civ.P. Rule 56(c) (Summary judgment "should be rendered if the pleadings, the discovery and disclosure

materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.").[1]   The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant may meet this burden by presenting evidence indicating there is no dispute of material fact or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof.  *Id.* at 322-324.

The defendants have met their evidentiary burden and demonstrated the absence of any genuine issue of material fact.  Thus, the burden shifts to the plaintiff to establish, with appropriate evidence beyond the pleadings, that a genuine issue material to his case exists. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Celotex*, 477 U.S. at 324; Fed.R.Civ.P. 56(e)(2) ("When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must ... set out specific facts showing a genuine issue for

---

[1] Effective December 1, 2007, "[t]he language of Rule 56 [was] amended ... to make the rule[] more easily understood and to make style and terminology consistent throughout the rules.  These changes ... are stylistic only."  Fed.R.Civ.P. 56 Advisory Committee Notes.  Thus, although Rule 56 underwent stylistic changes, its substance remains the same and, therefore, all cases citing the prior rule remain equally applicable to the current rule.

trial."). A genuine issue of material fact exists when the nonmoving party produces evidence that would allow a reasonable fact-finder to return a verdict in its favor. *Greenberg*, 498 F.3d at 1263.

> In civil actions filed by inmates, federal courts
>
> must distinguish between evidence of disputed facts and disputed matters of professional judgment. In respect to the latter, our inferences must accord deference to the views of prison authorities. Unless a prisoner can point to sufficient evidence regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail at the summary judgment stage.

*Beard v. Banks*, 549 U.S. 521, 530, 126 S.Ct. 2572, 2578, 165 L.Ed.2d 697 (2006) (internal citation omitted). Consequently, to survive the defendants' properly supported motion for summary judgment, Brown is required to produce "sufficient [favorable] evidence" which would be admissible at trial supporting his claim of a constitutional violation. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); Rule 56(e)(1), *Federal Rules of Civil Procedure*. "If the evidence [on which the nonmoving party relies] is merely colorable ... or is not significantly probative ... summary judgment may be granted." *Id*. at 249-250. "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the [trier of fact] could reasonably find for that party. *Anderson v. Liberty Lobby*, 477 U.S. 242, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986)." *Walker v. Darby*, 911 F.2d 1573, 1576-1577 (11th Cir. 1990). Conclusory allegations based on subjective beliefs are likewise insufficient to create a genuine issue

of material fact and, therefore, do not suffice to oppose a motion for summary judgment. *Waddell v. Valley Forge Dental Associates, Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001); *Holifield v. Reno*, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997) (plaintiff's "conclusory assertions ..., in the absence of [admissible] supporting evidence, are insufficient to withstand summary judgment."); *Harris v. Ostrout*, 65 F.3d 912, 916 (11th Cir. 1995) (grant of summary judgment appropriate where inmate produces nothing beyond "his own conclusory allegations" challenging actions of the defendants); *Fullman v. Graddick*, 739 F.2d 553, 557 (11th Cir. 1984) ("mere verification of party's own conclusory allegations is not sufficient to oppose summary judgment...."). Hence, when a plaintiff fails to set forth specific facts supported by requisite evidence sufficient to establish the existence of an element essential to his case and on which the plaintiff will bear the burden of proof at trial, summary judgment is due to be granted in favor of the moving party. *Celotex*, 477 U.S. at 322 ("[F]ailure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."); *Barnes v. Southwest Forest Industries, Inc.*, 814 F.2d 607, 609 (11th Cir. 1987) (if on any part of the prima facie case the plaintiff presents insufficient evidence to require submission of the case to the trier of fact, granting of summary judgment is appropriate).

For summary judgment purposes, only disputes involving material facts are relevant. *United States v. One Piece of Real Property Located at 5800 SW 74th Avenue, Miami,*

*Florida*, 363 F.3d 1099, 1101 (11th Cir. 2004).  What is material is determined by the substantive law applicable to the case.  *Anderson*, 477 U.S. at 248; *Lofton v. Secretary of the Department of Children and Family Services*, 358 F.3d 804, 809 (11th Cir. 2004) ("Only factual disputes that are material under the substantive law governing the case will preclude entry of summary judgment.").  "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case."  *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003) (citation omitted).  To demonstrate a genuine issue of material fact, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts....  Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  In cases where the evidence before the court which is admissible on its face or which can be reduced to admissible form indicates that there is no genuine issue of material fact and that the party moving for summary judgment is entitled to it as a matter of law, summary judgment is proper.  *Celotex*, 477 U.S. at 323-324 (summary judgment appropriate where pleadings, evidentiary materials and affidavits before the court show there is no genuine issue as to a requisite material fact); *Waddell*, 276 F.3d at 1279 (to establish a genuine issue of material fact, the nonmoving party must produce evidence such that a reasonable

trier of fact could return a verdict in his favor).

Although factual inferences must be viewed in a light most favorable to the nonmoving party and *pro se* complaints are entitled to liberal interpretation by the courts, a *pro se* litigant does not escape the burden of establishing by sufficient evidence a genuine issue of material fact. *Beard*, 548 U.S. at 525, 126 S.Ct. at 2576; *Brown v. Crawford*, 906 F.2d 667, 670 (11ᵗʰ Cir. 1990). Thus, the plaintiff's *pro se* status alone does not mandate this court's disregard of elementary principles of production and proof in a civil case. In this case, Brown fails to demonstrate a requisite genuine issue of material fact in order to preclude summary judgment. *Matsushita*, *supra*.

## II. FACTS

In March of 2005, Brown served as a cook in the kitchen at Draper. At this time, inmate Kervin Goodwin also worked in the kitchen at Draper with similar duties to those of Brown. Prior to March 28, 2005, the date of the incident which forms the basis for this complaint, Brown and Goodwin engaged in verbal altercations regarding each inmate's view of their requisite duties in the kitchen. *Institutional Incident Report No. DCC-05-66 (Defendants' Attachment the Initial Affidavit of Anthony Smith) - Court Doc. No. 14-3* at 1. On the morning of March 28, 2005, Brown "inform[e]d Defendant Hill that other inmates were not working. [Inmate] Goodwin started arguing with Plaintiff, but started to help with the kitchen work, with no further incident...." *Plaintiff's Complaint - Court Doc.*

*No. 1* at 5.  Within the next two hours, Goodwin obtained grease "premeditatedly boiled the grease ... and waited until Plaintiff came in area of [the] stove to throw boiling grease in the Plaintiff's face and attacked him with a [stirring paddle], causing Plaintiff to be hospitalized, and suffer everlasting pain" and permanent disfigurement to his face, left ear, neck and upper body.  *Id*. at 5-6; *Clarification of Complaint - Court Doc. No. 35* at 3. This assault occurred at a time when defendant Smith, the officer "assigned to secure the kitchen [had] left the kitchen area" to supervise inmates on the back dock removing trash from the kitchen which Brown asserts violated the administrative regulation governing the responsibilities of the kitchen officer.  *Id*. at 6.

In their initial report addressing the allegations made by Brown, the defendants assert they had no prior knowledge of the verbal altercations between Brown and Goodwin as neither inmate reported these altercations to correctional officials or sought to have the other listed as an enemy.  *Defendants' Exhibit 1 to the Initial Special Report - Court Doc. No. 14-2 (Affidavit of James DeLoach)* at 1.  The defendants further maintain they had no knowledge of "inmate Goodwin's intentions..." to harm Brown.  *Id*. at 2.  Additionally, despite these verbal altercations, the pleadings filed by the parties demonstrate Brown never advised any correctional official that he feared attack from Goodwin.

Brown, pursuant to an order of this court, filed a response in opposition to the defendants' special report in which he concedes he did engage in verbal altercations with

Goodwin prior to the attack regarding their inability to work together in the kitchen. *March 8, 2006 Affidavit of Robert Brown - Court Doc. No. 16-2* at 2.  Brown likewise alleges defendant Hill was present in the kitchen during these verbal altercations, an allegation not contained in his original complaint.  Additionally, Brown claims in his response that on the morning of the attack upon his advising defendant Hill of Goodwin's refusal to work Goodwin threatened "he was going to get me for reporting he was not working."  *Id.*  Brown also makes a statement of which he has no personal knowledge regarding defendants Hill and Smith "hearing the [alleged] threat made by inmate Goodwin."  *Id.*

The assertion made by Brown with respect to a threat lodged by Goodwin is contradictory to the statement contained in the complaint in which Brown avers that after he informed defendant Hill of Goodwin's failure to work Goodwin "started arguing with Plaintiff, but started to help with the kitchen work, ***with no further incident***...."  *Plaintiff's Complaint - Court Doc. No. 1* at 5 (emphasis added).  Brown presents no explanation for the discrepancy of the statement in his complaint and the assertion contained in his subsequent affidavit.  This court may therefore disregard Brown's affidavit filed solely for the purpose of opposing summary judgment to the extent it directly contradicts a statement contained in his complaint.  *Van T. Junkins and Associates v. U. S. Industries, Inc.*, 736 F.2d 656, 657 (11th Cir. 1984); *see also McCormick v. Ft. Lauderdale*, 333 F.3d 1234,1240

n.7 (11th Cir. 2003) (contradictory affidavit submitted solely to defeat summary judgment may be disregarded by the court).   Moreover, Brown's suppositious and speculative statement regarding what he believes other individuals heard is not based on Brown's personal knowledge and, as such, this statement would not be admissible at trial.   Thus, this information cannot be considered by the court on summary judgment.   Rule 56(e)(1), *Federal Rules of Civil Procedure*; *Waddell*, 276 F.3d 1279 (a plaintiff's conclusory allegations based on purely subjective beliefs insufficient to oppose summary judgment); *Holifield*, 115 F.3d 1564 n.6 (conclusory assertions, standing alone, fail to withstand summary judgment).

In their supplemental special report filed in opposition to Brown's new allegations, defendant Smith maintains that "[a]t no time prior to inmate Goodwin assaulting inmate Brown did I hear inmate Goodwin threaten inmate Brown."   *Defendants' Exhibit 1 to the Supplemental Special Report (May 2, 2006 Affidavit of Anthony Smith) - Court Doc. No. 19-2* at 1.   Defendant Hill further maintains "[a]t no time on [March 28, 2005] did I hear inmate Goodwin and the plaintiff ... arguing.   At no time prior to the assault on inmate Brown did I hear inmate Goodwin threaten the plaintiff."   *Defendants' Exhibit 2 to the Supplemental Special Report (May 2, 2006 Affidavit of Wanda Hill) - Court Doc. No. 19-2* at 1.[2]

---

[2]In response to this report, Brown again states Goodwin threatened him based on his report to defendant Hill that Goodwin was not working and repeats his assertion Hill and Smith heard the threat.

## III.  DISCUSSION

Brown alleges defendants Hill and Smith failed to protect him from attack by Goodwin.  Brown further argues defendants Campbell and Riley enacted policies which created overcrowded conditions with insufficient security and these conditions "caused Plaintiff to be assaulted and suffer severe injuries...." *Plaintiff's Complaint - Court Doc. No. 1* at 6. He further argues defendant DeLoach had knowledge of prior "reports of violence in the institution" but failed to pursue appropriate measure so as to prevent further acts of violence. *Id*. at 7.  Brown also complains DeLoach failed to adequately train and supervise officers at Draper thereby resulting in the attack by Goodwin.  Brown, however, concedes "the only part Defendants [Williams], Parker and Mosely acted in ths matter" was publishing a menu which required preparation of a meal on the morning of the attack by Goodwin. *March 8, 2006 Affidavit of Robert Brown - Court Doc. No. 16-2* at 2.

In their affidavits, the defendants adamantly deny they acted with either callous disregard or deliberate indifference to Brown's safety.  Specifically, defendants Hill and Smith maintain that at the time of the attack by Goodwin they had no knowledge of any

---

However, as previously determined, the court may disregard each of these statements on summary judgment review.  Specifically, the allegation of a threat by Goodwin on the morning of the attack is in direct contradiction to Brown's statement in the complaint that Goodwin, upon learning of Brown's report to defendant Hill regarding "other inmates not working[,] ... argu[ed] with Plaintiff, but started to help with the kitchen work, with no further incident." *Plaintiff's Complaint - Court Doc. No. 1* at 5.  Additionally, to the extent Brown alleges defendants Hill and Smith heard this purported threat, he has no personal knowledge of what another individual actually heard and could not provide testimony regarding this specific matter. Consequently, neither statement is entitled to consideration by the court at this stage of the proceedings. *Junkins and Associates*, 736 F.2d at 657; Rule 56(e)(1), *Federal Rules of Civil Procedure*.

risk of danger to Brown nor any reason to believe Brown faced a substantial risk of harm while performing his job in the kitchen.  Interestingly, an affidavit submitted by Brown in his August 13, 2006 response supports the defendants' assertion.  "Everybody [working in the kitchen] knew that [Brown and Goodwin] had been arguing ... but nobody thought inmate Goodwin would throw hot grease into inmate Brown's face."  *June 6, 2006 Affidavit of Inmate Charleston George - Court Doc. No. 21-2* at 2.  Defendant Smith also maintains he remained on his "post as kitchen security officer" at all times during the day of the attack, *Defendants' Exhibit 1 to the Supplemental Special Report (May 2, 2006 Affidavit of Anthony Smith) - Court Doc. No. 19-2* at 1, as monitoring removal of trash from the kitchen through the back dock is part of such assigned duty.  *Standard Operating Procedure 5-48 for Draper Correctional Facility Kitchen Security Officer (Defendants' Attachment to the Affidavit of James DeLoach) - Court Doc. No. 14-2* at 3 ("The kitchen back door is to remain locked at all times except when under the strict supervision of the [kitchen] officer or steward....  Trash and garbage receptacles will only be removed from the kitchen area under the supervision of the [kitchen] officer....  As the trash and garbage is removed from the kitchen area, the officer will observe the inmates as they transfer the contents [to appropriate receptacles].  The officer will inspect the trash and garbage for kitchen utensils, inmate clothing and unauthorized food items so that they are not disposed of.").  The defendants likewise argue neither overcrowding, understaffing nor correctional

policies caused the assault on Brown.

### A.  Official Capacity Claims and Eleventh Amendment Immunity

To the extent Brown sues each of the defendants in their official capacity, the defendants argue they are immune from suit in their official capacities pursuant to the Eleventh Amendment.[3]  Official capacity lawsuits are "in all respects other than name, ... treated as a suit against the entity." *Kentucky v. Graham*, 473 U. S. 159, 166 (1985).  "A state official may not be sued in his official capacity unless the state has waived its Eleventh Amendment immunity, *see Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100, 104 S.Ct. 900, 908, 79 L.Ed.2d 67 (1984), or Congress has abrogated the state's immunity, *see Seminole Tribe v. Florida*, 517 U.S. 44, [59], 116 S.Ct. 1114, 1125, 134 L.Ed.2d 252 (1996).  Alabama has not waived its Eleventh Amendment immunity, ... and Congress has not abrogated Alabama's immunity.  Therefore, Alabama state officials are immune from claims brought against them in their official capacities." *Lancaster v. Monroe County*, 116 F.3d 1419, 1429 (11th Cir. 1997) (citation omitted); *Powell v. Barrett*, 496 F.3d 1288, 1304, 1308 (11th Cir. 2007) (state defendants sued in their official capacity for monetary damages are immune from suit under the Eleventh Amendment).

In light of the foregoing, it is clear that the defendants are state officials entitled to sovereign immunity under the Eleventh Amendment for claims seeking monetary damages

---

[3]Eleventh Amendment immunity does not foreclose suits for injunctive and/or declaratory relief against individual state officials; rather, if applicable, it forecloses suits for compensable damage awards.

from them in their official capacities. *Lancaster*, 116 F.3d at 1429; *Jackson v. Georgia Department of Transportation*, 16 F.3d 1573, 1575 (11th Cir. 1994). Thus, the defendants are entitled to absolute immunity from any claims for monetary relief presented against them in their official capacities. *Parker v. Williams*, 862 F.2d 1471 (11th Cir. 1989).

### B. Defendants Williams, Parker and Mosley

Brown acknowledges the only involvement of defendants Williams, Parker and Mosely related to their issuing a menu which directed preparation of a meal on the day of the assault by Goodwin. *March 8, 2006 Affidavit of Robert Brown - Court Doc. No. 16-2* at 2. Moreover, the record before the court demonstrates that the actions about which Brown complains did not occur pursuant to a policy enacted by the aforementioned defendants. It is therefore clear that Williams, Parker and Mosley are named as defendants solely due to their supervisory positions with the Alabama Department of Corrections in divisions related to food services.

The law is well settled that a defendant cannot be held liable under § 1983 based on a theory of respondeat superior or on the basis of vicarious liability. *Gray ex rel. Alexander v. Bostic*, 458 F.3d 1295, 1308 (11th Cir. 2006), *cert. denied*, ____ U.S.____, 127 S.Ct. 2428, 167 L.Ed.2d 1129 (2007) (" Supervisory officials cannot be held liable under § 1983 for the unconstitutional actions of their subordinates based on respondeat superior liability. *Hartley v. Parnell,* 193 F.3d 1263, 1269 (11th Cir.1999)."); *Belcher v. City of Foley*, 30 F.3d 1390, 1396 (11th Cir. 1994); *Zatler v. Wainwright*, 802 F.2d 397, 401

(11ᵗʰ Cir. 1986).  "Instead, supervisors can be held personally liable when either (1) the supervisor personally participates in the alleged constitutional violation, or (2) there is a causal connection between the actions of the supervisor and the alleged constitutional violation."  *Gray*, 458 F.3d at 1308 (citation omitted); *Jones v. Preuit & Mauldin*, 851 F.2d 1321 (11ᵗʰ Cir. 1988).

Brown does not dispute the lack of personal involvement by defendants Williams, Parker and Mosley in the attack lodged against him by Goodwin; rather, he concedes no such involvement.  Moreover, Brown presents no evidence of the requisite causal connection regarding defendants Williams, Parker and Mosley.  The court therefore concludes that these defendants are entitled to summary judgment on the claims lodged against them in their individual capacities.

### C.  Individual Capacity Claims - Failure to Protect

Correctional officials may be held liable under the Constitution for acting with "deliberate indifference" to an inmate's safety when the official knows that the inmate faces "a substantial risk of serious harm" and with such knowledge disregards that risk by failing to take reasonable measures to abate it.  *Farmer v. Brennan*, 511 U.S. 825, 828 (1994).  "It is not, however, every injury suffered by one inmate at the hands of another that translates into a constitutional liability for prison officials responsible for the victim's safety."  *Id.* at 834.   A constitutional violation occurs only "when a substantial risk of serious harm, of which the official is subjectively aware, exists and the official does not

'respond[] reasonably to the risk.' *Farmer v. Brennan*, 511 U.S. 825, 114 S.Ct. 1970, 1982-83, 128 L.Ed.2d 811 (1994).  A plaintiff must also show that the constitutional violation caused his injuries." *Marsh v. Butler County*, 268 F.3d 1014, 1028 (11th Cir. 2001) (en banc).

In *Farmer*, the Court identified both objective and subjective elements necessary to establish an Eighth Amendment violation.  With respect to the requisite objective elements, an inmate must first show "an objectively substantial risk of serious harm ... exist[ed]. Second, once it is established that the official is aware of this substantial risk, the official must react to this risk in an objectively unreasonable manner." *Marsh*, 268 F.3d 1028-1029.  As to the subjective elements, "***the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference***....  The Eighth Amendment does not outlaw cruel and unusual 'conditions'; it outlaws cruel and unusual 'punishments.' ... *[A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment*." *Farmer*, 511 U.S. at 837-838 (emphasis added).  "Proof that the defendant should have perceived the risk, but did not, is insufficient." *Campbell v. Sikes*, 169 F.3d 1353, 1364 (11th Cir. 1999) (citing *Farmer*, 511 U.S. at 838); *Cottrell v. Caldwell*, 85 F.3d 1480, 1491 (11th Cir. 1996) (quoting *Farmer*, 511 U.S. at 838) (same).  The conduct at issue "must involve more than ordinary lack of due care for the prisoner's interests or safety....  It is

***obduracy and wantonness, not inadvertence or error in good faith***, that characterize the

conduct prohibited by the Cruel and Unusual Punishments Clause, whether that conduct

occurs in connection with establishing conditions of confinement, supplying medical needs,

or restoring official control over a tumultuous cellblock." *Whitley v. Albers*, 475 U.S. 312,

319 (1986) (emphasis added).

> To be deliberately indifferent, Defendants must have been
> "subjectively aware of the substantial risk of serious harm in order to have
> had a '"sufficiently culpable state of mind."'" *Farmer*, 511 U.S. at 834-38,
> 114 S.Ct. at 1977-80; *Wilson v. Seiter*, 501 U.S. 294, 299, 111 S.Ct. 2321,
> 2324-25, 115 L.Ed.2d 271 (1991).... Even assuming the existence of a
> serious risk of harm and legal causation, the prison official must be aware of
> specific facts from which an inference could be drawn that a substantial risk
> of serious harm exists - and the prison official must also "draw that
> inference." *Farmer*, 511 U.S. at 837, 114 S.Ct. at 1979.

*Carter v. Galloway*, 352 F.3d 1346, 1349 (11th Cir. 2003). "The known risk of injury must

be a strong likelihood, rather than a mere possibility before a guard's failure to act can

constitute deliberate indifference." *Brown v. Hughes*, 894 F.2d 1533, 1537 (11th Cir. 1990)

(citations and internal quotations omitted); *Rich v. Bruce*, 129 F.3d 336, 339-340 (4th Cir.

1997) (unless a prison official actually makes the inference that a substantial risk of serious

harm exists, he does not act with deliberate indifference even though his actions violate

prison regulations or can be described as stupid and lazy). As the foregoing makes clear,

"[m]erely negligent failure to protect an inmate from attack does not justify liability under

section 1983...." *Brown*, 894 F.2d at 1537. Thus, in order to survive summary judgment

on his deliberate indifference claims, Brown is required to produce sufficient favorable

evidence demonstrating (1) an objectively substantial risk of serious harm; (2) subjective awareness of this risk on the part of the defendants; (3) the defendants responded to such risk in an objectively unreasonable manner; and (4) the actions/omissions of the defendants caused his injuries. *Farmer*, 511 U.S. at 837-838; *Marsh*, 268 F.3d 1028-1029; *Hale v. Tallapoosa County*, 50 F.3d 1579, 1582 (11th Cir. 1995).

1. **The Attack by Inmate Kervin Goodwin.** Brown maintains defendants Hill and Smith failed to protect him from the attack by Goodwin. The evidentiary materials properly before this court and entitled to consideration at this stage of the proceedings establish that this attack did not occur due to any deliberate indifference or reckless disregard by defendants Hill and Smith to Brown's safety. Specifically, the evidence does not indicate defendants Hill and Smith were aware of facts establishing the existence of an objectively substantial risk of serious harm to Brown. Moreover, there is nothing before the court which shows that these defendants acted with callous disregard for Brown's safety. At best for Brown, the evidence shows Hill and Smith were present in the kitchen when Brown and Goodwin argued with each other. Even assuming *arguendo* that Hill and Smith heard the arguments, such would not have apprised them of a substantial risk of serious harm as mere arguments among inmates "does not provide a sufficient basis to make the inferential leap that a substantial risk of serious harm to Plaintiff existed." *Carter*, 352 F.3d at 1350. There is simply nothing before the court which indicates the defendants had knowledge of specific facts from which one could objectively infer that

18

Goodwin posed a substantial risk of serious harm to Brown nor is there any evidence that either Hill or Smith actually drew the inference that such a risk existed.  Under the circumstances of this case, "to find [Hill and Smith] sufficiently culpable would unduly reduce awareness to a more objective standard, rather than the required subjective standard set by the Supreme Court."  *Id.*

The record before this court is devoid of evidence that defendants Hill and Smith at any time drew the inference that a substantial risk of serious harm to Brown existed. "Plaintiff has failed to establish that either Defendant had a subjective awareness of a substantial risk of serious physical threat to Plaintiff; thus, Plaintiff has failed to establish a required element of this claim. When viewing the evidence most favorably toward Plaintiff, a claim for deliberate indifference has not been established...." *Carter*, 352 F.3d at 1350.

2.   **Policies, Training and General Conditions.**   Brown alleges defendants DeLoach, Campbell and Riley violated his Eighth Amendment right to be free from cruel and unusual punishment by failing to ensure his physical safety in an environment of overcrowding and understaffing which provided the opportunity for Goodwin to attack him.  Brown further complains that the aforementioned defendants have failed to enforce current policies or enact new ones to heighten protection of inmates from inmate-on-inmate violence.   Finally, Brown argues that correctional officers at Draper are inadequately trained and supervised.

In response to these claims, the defendants maintain that the attack on Brown did not result from overcrowding, correctional policies or lack of sufficient and adequately trained staff.  The defendants assert the assault by Goodwin on Brown was an isolated incident which occurred when Goodwin acted out of frustration because Brown had been repeatedly challenging his work ethic.  They further argue "that without prior knowledge of inmate Goodwin's intentions no amount of security could have prevented [his attack on Brown]."  *Defendants' Exhibit 1 to the Initial Special Report - Court Doc. No. 14-2 (Affidavit of James DeLoach)* at 2.

With respect to the objective element of Brown's Eighth Amendment claim, he must show that the conditions under which he was incarcerated presented "a substantial risk of serious harm" to him, *Farmer*, 511 U.S. at 834, to which the defendants responded in an objectively unreasonable manner. *Marsh*, 268 F.3d at 1028-1029.  In addressing whether a substantial risk of serious harm exists, "[t]his objective standard 'embodies "broad and idealistic concepts of dignity, civilized standards, humanity, and decency ...,"' but must be balanced against competing penological goals." *LaMarca v. Turner*, 995 F.2d 1526, 1535 (11th Cir. 1993) (citations omitted).  Similarly, a court must remain mindful that a "prison custodian is not the guarantor of a prisoner's safety." *Popham v. City of Talladega*, 908 F.2d 1561, 1564 (11th Cir. 1990).  While "an excessive risk of inmate-on-inmate violence at a jail creates a substantial risk of serious harm[,] 'occasional, isolated attacks by one prisoner on another may not constitute cruel and unusual punishment....'" *Purcell ex rel.*

*Estate of Morgan v. Toombs County, Georgia*, 400 F.3d 1313, 1320 (11th Cir. 2005) (internal citation omitted) (granting summary judgment for sheriff and jail administrator where plaintiff failed to present evidence that conditions at the jail rose to the level of a constitutional violation, despite the fact that inmates were allowed to keep money in their cells; inmates were allowed to play cards and gamble; the physical layout of the jail hindered guards from seeing into certain cells at night from the control tower; and there was a history of isolated, inmate-on-inmate fights).

Here, Brown presents no evidence that prison policies, the staff shortage, inadequately trained staff or overcrowding actually posed an objectively substantial risk of serious harm to him.  Although Brown has alleged the occurrence of isolated incidents of inmate-on-inmate violence, he fails to demonstrate that these acts resulted from overcrowding, understaffing or deficient policies.  Moreover, the evidence submitted by Brown falls woefully short of establishing exposure to anything "even approaching 'the constant threat of violence.'"  *Purcell*, 400 F.3d at 1321.  Therefore, when viewing the evidence in a light most favorable to Brown, the court concludes that the conditions under which he was incarcerated failed to pose a substantial risk of serious harm so as to satisfy the objective element of his Eighth Amendment claim.

Brown likewise fails to advance any proof that defendants DeLoach, Campbell and Riley were subjectively, deliberately indifferent to any risk of serious harm.  Brown has not shown these defendants were subjectively aware that a substantial risk of serious harm

existed and, with such knowledge, "knowingly or recklessly" declined to take action to prevent the perceived harm. *LaMarca*, 995 F.2d at 1535; *Marsh*, 268 F.3d at 1028 (a constitutional violation occurs only when the prison official is subjectively aware of a substantial risk of serious harm and the official fails to respond to the risk in a reasonable manner). As discussed above, Brown has failed to present sufficient, admissible evidence that the conditions at Draper actually posed a substantial risk of serious harm to him. Although it is undisputed that inmate assaults occur in the prison system, the record fails to show "that a substantial risk of inmate attacks was longstanding, pervasive, well-documented, or expressly noted by prison officials in the past." *Farmer*, 511 U.S. at 842 (internal quotation marks omitted).  Even if the prison system was experiencing conditions of overcrowding and/or understaffing at the time of the assault on Brown, such allegations are insufficient to establish that defendants DeLoach, Campbell and Riley knew a substantial risk of serious harm to Brown existed and, with such knowledge, deliberately failed to prevent the harm.  The requisite element of subjective awareness on the part of defendants DeLoach, Campbell and Riley is therefore absent in this case. *Carter*, 352 F.3d at 1350.

Finally, Brown fails to show that actions, orders, customs, policies or breaches of statutory duty by defendants DeLoach, Campbell and Riley proximately caused the deprivation of his constitutional rights. Brown has likewise presented no evidence, substantially probative or otherwise, that the assaults were the proximate result of a lack

of security or overcrowded conditions.  Thus, the court finds Brown's evidence insufficient to satisfy the causation element of his Eighth Amendment claim against defendants DeLoach, Campbell and Riley.

While it is unfortunate that Brown suffered serious injuries at the hands of a fellow inmate, the record is completely devoid of admissible evidence that the assault occurred due to the deliberate indifference of defendants DeLoach, Campbell and Riley.  Brown presents no evidence of an objectively substantial risk of serious harm nor is there any evidence demonstrating the defendants' subjective awareness of a substantial risk of harm, each of which is a required element of his Eighth Amendment claim.  Additionally, the evidence is insufficient to establish causation.  In light of the foregoing, defendants DeLoach, Campbell and Riley are entitled to summary judgment.  *Carter*, 352 F.3d at 1350.

### D.  Claims Challenging the Failure to Follow Regulations and Procedures

Brown maintains that the defendants violated his constitutional right to due process when they failed to follow various administrative regulations and standard operating procedures  regarding security provided in the kitchen at Draper.  The mere violation of departmental regulations and/or standard operating procedures does not assert a violation of an inmate's constitutional rights.  *Sandin v. Conner*, 515 U.S. 472 (1995); *Harris v. Birmingham Board of Education*, 817 F.2d 1525 (11th Cir. 1987).  The defendants are therefore entitled to summary judgment on these claims.

23

### E.  State Law Claim

Brown requests that this court adjudicate his pendent state law claim regarding the assault and battery committed against him by inmate Goodwin.  Review of any pendent state law claim is only appropriate upon exercise of this court's supplemental jurisdiction. In the posture of this case, however, the court concludes that exercise of such jurisdiction is inappropriate.

> Two factors determine whether state law claims lacking an independent federal jurisdictional basis can be heard in federal court with a federal claim over which the court has jurisdiction.  To exercise pendent jurisdiction [or what is now identified as supplemental jurisdiction] over state law claims not otherwise cognizable in federal court, "the court must have jurisdiction over a substantial federal claim and the federal and state claims must derive from a 'common nucleus of operative fact.'" *Jackson v. Stinchcomb,* 635 F.2d 462, 470 (5th Cir.1981) (quoting *United Mine Workers v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966)).  *See generally* C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure: Jurisdiction* § 3567 pp. 443-47 (1975).

*L.A. Draper and Son v. Wheelabrator Frye, Inc.*, 735 F.2d 414, 427 (11th Cir. 1984).  The exercise of supplemental jurisdiction is completely discretionary.  *United Mine Workers v. Gibbs*, 383 U.S. 715 (1966).  "If the federal claims are dismissed prior to trial, *Gibbs* strongly encourages or even requires dismissal of the state claims." *L.A. Draper and Son*, 735 F.2d at 428.  In view of this court's resolution of the federal claims presented by Brown, any pendent state claims are due to be dismissed.  *Gibbs*, 383 U.S. at 726 (if the federal claims are dismissed prior to trial, the state claims should be dismissed as well); *see also Ray v. Tennessee Valley Authority*, 677 F.2d 818 (11th Cir. 1982).

24

## IV.  CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1.  The defendants' motion for summary judgment be GRANTED.

2.  Judgment be GRANTED in favor of the defendants.

3.  This case be dismissed with prejudice.

4.  No costs be taxed against the plaintiff.

It is further

ORDERED that on or before November 6, 2008 the parties may file objections to this Recommendation.  Any objections filed must clearly identify the findings in the Magistrate Judge's Recommendation to which the party is objecting.  Frivolous, conclusive or general objections will not be considered by the District Court.  The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and advisements in the Magistrate Judge's Recommendation shall bar the party from a de novo determination by the District Court of issues covered in the Recommendation and shall bar the party from attacking on appeal factual findings in the Recommendation accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982).  *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982).  *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981,

*en banc*), adopting as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

Done this 24th day of October, 2008.


/s/ Terry F. Moorer
TERRY F. MOORER
UNITED STATES MAGISTRATE JUDGE